**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Flint Farms LLC, | No. CV-20-00091-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Nationwide Agribusiness Insurance Company, | |
| Defendant. | |

This matter is before the Court on Defendant Nationwide Agribusiness Insurance Company's ("Nationwide") Motion for Summary Judgment.[1] (Doc. 48). Plaintiff Flint Farms LLC ("Plaintiff"), filed a Response (Doc. 51) and Nationwide filed a Reply (Doc. 53).

**I.   Background**

This is an insurance coverage dispute for damages sustained in a house located at 6321 South 196th Drive, Buckeye, Arizona, occupied by Roger Cheatham and owned by Plaintiff. (Doc. 1-3). The Complaint alleges that on or about Friday, June 15, 2018, a sewer leak was discovered by Cheatham near the master bathroom. (Doc. 1-3 at 6). Cheatham alleges that months prior to the discovery of the sewer leak, he had noticed cracks forming in the master bedroom and kitchen. (Doc. 48-1 at 6). Moreover, Cheatham acknowledges that the cracks were getting bigger over time and that he never

---

[1] Both parties requested oral argument in this matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

physically saw any water inside the house. (*Id.*) After discovering the leak in June 2018, Plaintiff promptly contacted Randy Kowalski, a commercial property claim specialist at Nationwide, the insurer of the property. (Doc. 1-3 at 7). The first inspection by Nationwide was performed the next business day on Monday, June 18, 2018. That inspection did not reveal any water damage, but did reveal cracking and shifting walls, and evidence of soil movement under the foundation. (Doc. 48-1 at 5-6). Nationwide retained American Leak Detection ("ALD") to perform a leak analysis of the sewer line the following day. (Doc. 1-3 at 7). ALD found a leak in the sewer line in a hallway near the master bedroom. (Doc. 48-1 at 63-66). ALD estimated the cost to repair the leak would be $3,500. (*Id.*) Nationwide subsequently retained a structural engineer from Augspurger Komm, Joseph Zbick, to inspect the property and formulate a report on the cause of the sewer leak and cracking throughout the property. (Doc. 1-3 at 7). Zbick's report concluded that the substantial cracking throughout the home, and uneven and cracked sidewalks and paved spaces outside the home, were evidence of expansive soil. (Doc. 48-1 at 94-104). The Arizona Geological Survey, which rates shrink-swell potential of an area as either low, moderate, or high risk, shows that the property is located in an area at high risk for shrinking and swelling soil. (*Id.* at 102). Zbick opined that the house was constructed on expansive soils and poorly prepared subgrade. (*Id.* at 94-104). Zbick concluded that the cracks throughout and outside the house were created by "heaving and settling of the soils" due to wet and dry weather cycles and that the expansive and shifting soils caused the sewer line joint to separate and leak, which then caused more expanding and shifting of soil. (*Id.*)

Plaintiff independently retained Mowry Public Adjusting ("Mowry") on a contingent fee basis to take over communications with Nationwide and provide its own reports. (Doc. 1-3 at 7). Mowry determined that the cleaning of the Property would cost $44,714.71, and that the replacement cost for repairs and remodel would total $644,008.02. It is undisputed that the home was purchased two years prior for $402,000. Plaintiff's Policy with Nationwide explicitly excludes:

> damages resulting directly or indirectly from sinking, rising, shifting, contracting, expanding, freezing, thawing, and improperly compacted soil and action of water under the ground surface caused by human or animal forces regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(Doc. 48-1 at 107-110). Based on the Policy exclusions, and on Zbick's conclusions that soil movement caused the cracks and leak, Nationwide denied Plaintiff's claim on July 27, 2018. (*Id.* at 112-14).

In August of 2018, Mowry contacted Nationwide to report mold inside the home. Nationwide retained Clark Seif Clark, Inc. ("CSC") to perform a moisture and mold investigation. (Doc. 48-1 at 116-127). CSC concluded that although there appeared to be some mold near the area of the master bathroom tub and shower, that the indoor air mold spore counts were balanced when compared to outdoor air samples, indicating no amplification of airborne mold in the home. (Doc. 48-1 at 119).

On October 3, 2018, Zbick performed a second site inspection, including hiring Peerless Plumbing and Precision Leak Locators to conduct a video inspection of the sewer drain and the bathroom shower. The findings indicated that the bathroom shower leak, which ALD had previously noted, was unrelated to the sewer leak. Zbick concluded this leak was due to improper construction because the slab and foundations were not properly designed to account for the shifting soil potential. As for the sewer line, no breaks or damage were identified on the video inspection. (Doc. 48-1 at 132). Zbick's second report's conclusions remained the same as his first, that "the only notable stresses on the lines, under normal use, are the result of external forces such as soil movement." (*Id.*); (Doc. 1-3 at 8). Following receipt of Zbick's supplemental report, Nationwide confirmed denial of the claim on October 18, 2018. (*Id.* at 137-41).

Ultimately, Plaintiff's representative, Mr. Mowry, agreed with Zbick's conclusions that the cracking and damage in the house was the result of the expansive soils. (Doc. 48-1 at 22-23). Mowry also acknowledged that the Policy excluded coverage from damages resulting from earth movement or a sewer line leak. (*Id.* at 53).

In August 2019, over a year after the initial denial, Plaintiff requested Nationwide consider reports from an architect, Randel Jacob of RJDG Collaborative, and a geotechnical engineer, Zebi Tolunay of Tolunay Engineering Group, both retained by Plaintiff. Jacob opined that the shifting soils would have appeared earlier and that moisture from the sewer leaks could be saturating the slab. (Doc. 48-1 at 144-48). Tolunay, who first inspected the property a year after the date of loss, concluded that moisture was in the soil, and that it was cohesionless, silty, poorly graded gravel with silt and sand, which could cause the soil to move. (Doc. 48-1 at 152-55). Tolunay agreed in his deposition that all he confirmed was the presence of moisture in the soil and did not know whether it was from a pipe leak. (*Id.*)

Based on these two new reports submitted by Plaintiff, Nationwide had Zbick prepare a second supplemental report. (Doc. 48-1 at 160-65). Zbick, relying in part on Tolunay's opinions that "the cohesive soils indicate a high swell potential when subjected to moisture increase," stated that his opinions remained unchanged, and that the losses were caused by improperly conditioned soils, by wetting and drying cycles of expansive soils, by moisture introduced into the soil from the sewer leak, and because the slab and foundations were not properly designed to withstand the soil movement. (*Id.*)

Plaintiff alleges that the damages to the property were caused not by earth movement, but by the sewer leak. Plaintiff brings two causes of action against Nationwide: breach of contract and bad faith insurance denial, and seeks compensatory and punitive damages. (Doc. 1-3). Nationwide argues the damages were caused by earth movement, and thus are excluded from the Policy. Alternatively, Nationwide argues that even assuming that the sewer leak contributed to the earth movement, the Policy still excludes coverage. Nationwide seeks summary judgment on both claims.

**II.     Legal Standards**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23

(1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence." *Hunton v. Am. Zurich Ins. Co.*, 2018 WL 1182552, at *1 (D. Ariz. Mar. 7, 2018). "[T]he non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

### A. Count One: Breach of Contract

Plaintiff alleges that Nationwide breached its contract and implied covenant of good faith and fair dealing by failing to pay the claim for damages. (Doc. 1-3 at 10). Plaintiff alleges that the provision at issue is ambiguous, that the denial is controverted by expert opinions, and that the Policy's anti-concurrent clause conflicts with Arizona law. (Doc. 51 at 9-12). Nationwide alleges that it properly denied the claim because the Policy excludes "damages resulting directly or indirectly from sinking, rising, shifting, contracting, expanding, freezing, thawing, and improperly compacted soil." (Doc. 48-1 at 107-110). Nationwide argues that after investigating the claim, and after numerous experts opined on the cause of the loss being due to earth movement, it properly denied the claim. Nationwide

alternatively argues that it does not matter whether the earth movement caused the sewer leak, or whether the sewer leak contributed to the earth movement, because the Policy excludes coverage for the loss in either scenario. (Doc. 48 at 8). Plaintiff argues it is "premature to conclude that the contract exclusion applies as a matter of law." (Doc. 51 at 9).

"The interpretation of an insurance contract is a question of law to be determined by the Court . . . in a manner according to [its] plain and ordinary meaning." S*parks v. Republic Nat. Life Ins. Co*., 647 P.2d 1127, 1132 (1982). The "insurance policy language controls the scope and extent of an insurer's duty to defend." *Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co*., 913 P.2d 505, 508 (Ariz. Ct. App. 1996). "[A]n insurer's duty to defend a policyholder is not absolute and will depend upon the actual facts rather than upon the allegations of the complaint." *Granite State Ins. Corp. v. Mountain States Tel. & Tel. Co*., 573 P.2d 506, 509 (Ariz. Ct. App. 1977). Moreover, an insurance company does not breach its contract with an insured when denying a claim that is not covered under the policy. *See Wells Fargo Bank, N.A. v. Commonwealth Land Title Ins. Co*., 2019 WL 2062947, at *4 (D. Nev. May 9, 2019) ("Because Wells Fargo's claim was not covered by the policy, Commonwealth did not breach the contract when it denied coverage.").

### 1. Ambiguity of Provision

Plaintiff first argues that the Policy's earth movement exclusion is ambiguous and therefore, not a basis for Nationwide to deny the claim. (Doc. 51 at 9). Plaintiff argues that other jurisdictions have found that some earth movement provisions are ambiguous because these exclusions "typically only list naturally occurring events in their definitions . . . but earth movement can be caused by unnatural events as well." (Doc. 51 at 10). Plaintiff cites to a case where there was a fact issue as to whether the damage was caused by an act of nature or a man-made action. However, Plaintiff does not argue that *its* Policy narrowly defines earth movement in this way, and a review of the provision indicates that it does not. The Policy here explicitly excludes earth movement regardless of whether it is caused by human or animal forces or an act of nature. (Doc. 48-1 at 107-110). The cases

cited by Plaintiff are not relevant here, nor are the arguments that other jurisdictions sometimes conclude that there is ambiguity in earth movement exclusions that only list naturally occurring events. Plaintiff has not identified a dispute of material fact, and the Court finds that the Policy provision, reading it according to its plain and ordinary meaning, is unambiguous.

### 2. Expert Opinions

Plaintiff also argues, without any citation to the record, that the denial of the claim is contrary to the weight of expert opinions as to the cause of the damage. Plaintiff lifts a few lines from Zbick's report, focusing on his use of the word "likely." Plaintiff argues that the use of the word "likely" demonstrates that Zbick "has not made a judgment to an engineering certainty." (Doc. 51 at 12). Plaintiff cites to no authority for this statement or how it should preclude summary judgment, nor does he cite to the record. In fact, there are no citations anywhere in this entire section of Plaintiff's brief.[2]

Plaintiff also argues that its retained architect, Jacob, "denounced Nationwide's assertion" and contradicts Nationwide's denial. (*Id*.) However, when examining the record, the Court finds that Jacob stated that it was his opinion, based on the age of the house, that any shifting soils would have presented earlier than they did. (Doc. 48-1 at 144-48). This opinion as to the shifting soils, from an architect, hardly shows a denunciation of the balance of Nationwide's experts' opinions. Citing no evidence in the record to establish that Jacob "denounced" Nationwide's conclusions as to the cause of the damage, Plaintiff fails to establish a fact dispute. *See Anderson,* 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Plaintiff also claims that it's retained expert, Tolunay, "concluded the Property's

---

[2] As stated in the parties' Scheduling Order, "Each citation to evidence in support of a fact must include a pin citation to the specific page(s) proving that fact. No party shall presume the Court will hunt for facts or theories that might support either party's case. The Court will rely solely upon the attached evidence to verify facts asserted in the motion, response, or reply as identified by a pin cite. Any fact that is not addressed may be deemed by the Court to be uncontested." (Doc. 13 at 5).

structural damage was caused by the sewer line leak." (Doc. 51 at 12). Having reviewed Tolunay's report and deposition, the Court disagrees. Tolunay, who first inspected the property a year after the date of loss, found the presence of moisture in the soil, and that it was cohesionless, silty, poorly graded gravel with silt and sand, which could cause the soil to move. (Doc. 48-1 at 152-55). Tolunay agreed in his deposition that all he confirmed was that there was moisture in the soil and he did not know whether it was from a pipe or sewer line leak. (*Id.*)

> <u>Question</u>: You don't know if moisture in the soil came from sprinklers around the house. You don't know if it came from an overflow from water from some other source, you don't know where moisture and water came from at that house, correct?
> <u>Tolunay</u>: Correct.
>
> <u>Question</u>: And you were never asked to determine that, correct?
> <u>Tolunay</u>: Correct.
>
> <u>Question</u>: All you were asked to do is drill bore holes, correct?
> <u>Tolunay</u>: Correct.

If Tolunay concluded, as Plaintiff states in its Response, that "the Property's structural damage was caused by the sewer line leak," then Plaintiff has information that has not been provided to the Court. As Plaintiff does not cite to a document to support this statement, and no such finding appears in the record that the Court is aware of, Plaintiff's assertion cannot be used to defeat summary judgment. *See S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) ("[A] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda.").

Considering the entirety of Plaintiff's arguments in this section, there is no evidence to rebut the reasonableness of Nationwide's finding that earth movement caused the damage based on a preponderance of the evidence and expert opinions. This is not a basis to deny summary judgment.

### 3. Anti-Concurrent Causation Provision

Plaintiff next argues that the Policy's anti-concurrent causation provision is inconsistent with Arizona's standard fire insurance policy and is unenforceable. (Doc. 51 at 14). "An anti-concurrent causation clause excludes a loss if the loss results from a combination of covered and excluded perils." *Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co*., 939 F. Supp. 2d 1059, 1074 (D. Haw. 2013). Here, Nationwide argues that even assuming that the sewer leak caused the soil movement and the associated damages to the property, there is no coverage because the Policy excludes coverage for losses sustained because of earth movement "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Doc. 48-1 at 107-110).

Plaintiff argues this provision is unenforceable based on the Ninth Circuit's decision in *Stankova v. Metro. Prop. & Cas. Ins. Co*., 788 F.3d 1012, 1017 (9th Cir. 2015). There, the policy allowed coverage for damages sustained by fire, but not for damages from mudslides. The plaintiff's home was destroyed by a mudslide that occurred one month after a large wildfire destroyed all the vegetation in the area. The insurance company denied coverage, finding that the policy excluded losses arising from mudslides. The Ninth Circuit held that there was an issue of fact as to whether the wildfire was the actual cause of the mudslide, and thus the cause of the loss. The court held that where Arizona law required all fire insurance policies conform to a standard policy that an insurer be required to provide coverage against all direct loss by fire, the insurance company could not "contract out of the standard fire policy's purpose so as to exclude coverage for this type of direct loss from fire." *Id.* The Ninth Circuit thus refused to enforce the anti-concurrent causation provision where it was possible that the loss was caused directly by fire. *Id*. The holding in *Stankova*, which was based on Arizona's standard fire insurance policy and is thus much narrower than Plaintiff's Response implies, does not apply where fire is not a cause or a concurrent cause of the loss. There are no allegations that fire had anything to do with the losses in this case. Plaintiff has

1  not established a dispute of material fact here, nor has it established that the anti-
2  concurrent causation provision here is unenforceable as a matter of law.

3  The Court finds Nationwide has established that there are no material facts
4  precluding entering summary judgment in its favor on the breach of contract and fair
5  dealing claim. Although Plaintiff now argues that it is premature for the Court to
6  determine whether the exclusion applies as a matter of law, this is the only time for the
7  Court to so determine. Therefore, as Plaintiff has not established the existence of a
8  genuine dispute as to any material fact, the Court will grant Nationwide's Motion as to
9  Count One.

### B. Count Two: Bad Faith

In Count Two, Plaintiff alleges that Nationwide intentionally denied the claim without a reasonable basis to do so, acting in bad faith. (Doc. 1-3 at 11). Nationwide argues that there is ample evidence in the record to support entering summary judgment on this claim. (Doc. 53 at 6).

Courts generally disfavor entering summary judgment where there is any question as to whether the insurer acted reasonably in denying the claim. *See Faulkner v. Wausau Bus. Ins.*, 571 F. App'x. 566, 567-68 (9th Cir. 2014). When insurance contract language is "reasonably susceptible" to more than one interpretation and "extrinsic evidence establishe[s] controversy over what occurred and what inferences to draw from the events, the matter is properly submitted to the jury." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1145 (Ariz. 1993). To prevail on a bad faith claim, a plaintiff must show that: (1) the insurer denied benefits without a reasonable basis, and (2) the insurer knowingly or recklessly disregarded the lack of a reasonable basis for denying the benefits. *Trus Joist Corp. v. Safeco Ins. Co.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1987). "The intent required here is an 'evil hand'—the intent to do the act. Mere negligence or inadvertence is not sufficient—the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds." *Rawlings v. Apodaca*, 726 P.2d 565, 576 (Ariz. 1986). "A bad faith claim based solely on a carrier's denial of coverage will fail on the

merits if a final determination of noncoverage is ultimately made." *Desert Ridge Resort LLC v. Occidental Fire & Cas. Co. of N. C.*, 141 F. Supp. 3d 962, 973 (D. Ariz. 2015).

Plaintiff alleges that Nationwide acted in bad faith by failing to conduct a timely and adequate investigation and in failing to process the claim "in a proper manner." (Doc. 1-3 at 13). Plaintiff further alleges that Nationwide created "undue delay" by conducting "repeat sewer line inspections," and ultimately committed bad faith by failing to make payments for the loss without reasonable justification. *Id.* Nationwide argues that there is no evidence to support Plaintiff's bad faith claim, and rather, the evidence of record supports that Nationwide acted reasonably in investigating and denying the claim.

As an initial matter, Plaintiff is correct that a finding of no coverage does not automatically extinguish a bad faith claim and that these claims are often submitted to a jury. However, in order to survive on summary judgment, it is the burden of a plaintiff to establish evidence of the bad faith and to counter the evidence put forward by Defendant to create a dispute of material fact. *See Taylor*, 854 P.2d at 1145. Plaintiff has not done so.

There is ample evidence in the record that Nationwide promptly investigated the claim. This prompt investigation began with sending Mr. Kowalski to investigate the property the next business day after receiving Plaintiff's call. Nationwide continued to investigate the claim for over a year. The investigation included hiring structural engineer Joseph Zbick, moisture and mold investigators from Clark Seif Clark, Inc., leak specialists from Precision Leak Locators and American Leak Detection, and plumbers from Peerless Plumbing to conduct a video inspection of the sewer drain and the bathroom shower. Nationwide's investigation also included numerous communications with Plaintiff's representative, Mr. Mowry, and reviewing and considering opinions and inspections by Plaintiff's retained experts Jacob and Tolunay. Moreover, each time Mowry forwarded new information, Nationwide retained Zbick to review the information and provide supplemental reports. All told, Zbick provided three thorough reports. Importantly, Plaintiff's engineer and architect did not opine that shifting earth played no part in the

damage to the property. Moreover, Mr. Cheatham agreed that Nationwide acted reasonably in retaining ALD to perform leak detection and Augspurger to perform a structural analysis of the property, and also stated that it was reasonable that Nationwide hired Clark Sief Clark to conduct a moisture and mold investigation at his request. (Doc. 48-1 at 15-17). Cheatham also acknowledged that reasonable minds could differ as to the cause of the loss. (*Id.* at 16). That he now argues that it was unreasonable for Nationwide to inspect the sewer line multiple times, when it was conducting additional investigations at Plaintiff's request, is unpersuasive.

Considering the overwhelming evidence of Nationwide's prompt and full investigation of the claim, and the lack of any evidence from Plaintiff to show otherwise, the Court finds that Plaintiff's bad faith claim must fail.[3] The Court will grant Nationwide's Motion for Summary Judgment as to Count Two.

### III. Conclusion

Because Plaintiff has failed to state a claim for relief as a matter of law, the requests for monetary and punitive damages also fail. The Court will grant Nationwide's Motion for Summary Judgment in its entirety and dismiss this action.

//

//

---

[3] Having not presented a genuine issue of material fact on this claim, the Court notes that Plaintiff attached to its Response a "rebuttal report" from an insurance expert, Terry McNeil. (Doc. 51-3 at 82). Nationwide argues the Court should not consider this report as it was not disclosed by the expert disclosure deadline. The Court agrees. Plaintiff's initial expert disclosure deadline was June 26, 2020. (Doc. 13). On June 19, 2020, the Court received a Stipulation to extend that deadline for 30 days, to July 27, 2020, which the Court granted. (Docs. 27 & 28). Plaintiff failed to disclose any experts by that date. A month later, Plaintiff sought to retroactively extend the deadline, blaming the failure to disclose on a staff member and stating that after discovery of the error, the staff member was no longer employed by counsel's law firm. (Doc. 32-2 at 2). For a number of reasons, the Court denied the late-filed request, finding that Plaintiff had not established good cause or excusable neglect. (Doc. 36). It now appears that Plaintiff has attempted to get around its failure to timely disclose experts by attaching a late-disclosed expert report to its Response and titling the report as a "rebuttal" report even though the contents of the report seek to support Plaintiff's case-in-chief. This is not allowed. *See Adair v. Safeco Ins. Co. of Illinois*, 2010 WL 11561467, at *2 (D. Mont. Apr. 9, 2010) ("Plaintiff will not be allowed to make an untimely disclosure of a liability expert by designating that person a rebuttal expert."). The Court does not look favorably on this attempt to circumvent its prior Orders and the Federal Rules.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 48) is **granted**. The Clerk of Court shall enter judgment in Defendant's favor and terminate this matter.

Dated this 29th day of June, 2021.

Honorable Diane J. Humetewa
United States District Judge